## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., as subrogee and assignee of Montefiore Medical Center, <br><br> Plaintiff, <br><br> vs. <br><br> SURGALIGN SPINE TECHNOLOGIES, INC., formerly known as RTI SURGICAL, INC.; NUTECH SPINE, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 22-cv-9870 |

## COMPLAINT

National Union Fire Insurance Company of Pittsburgh, Pa., as subrogee and assignee of Montefiore Medical Center, complains of Surgalign Spine Technologies, Inc. f/k/a RTI Surgical, Inc. and NuTech Spine, Inc. as follows:

## INTRODUCTION

1.      Surgalign Spine Technologies, Inc. f/k/a RTI Surgical, Inc. ("Surgalign") marketed and sold synthetic implants for use in spinal surgeries.  NuTech Spine, Inc. ("NuTech") marketed and sold tissue-based solutions for use in spinal surgeries. Surgalign and NuTech are collectively referred to herein as the "Suppliers" and their products are collectively referred to as "Implants."

2.      Between at least 2015 and 2020, the Suppliers retained Rosemarie Mastandrea ("Mastandrea") as a sales representative.  Mastandrea marketed Suppliers' Implants to Montefiore Medical Center ("Montefiore"). Unbeknownst to Montefiore, Mastandrea submitted false invoices ("Fraudulent Invoices") to Montefiore, thereby falsely representing that Suppliers' Implants had been used in spinal surgeries. Mastandrea bribed Rowena Dellosa ("Dellosa"), a Montefiore employee, to fraudulently induce Montefiore to pay the Fraudulent Invoices, including by altering

1

implant records to falsely represent that the Suppliers' Implants had been used in surgical procedures.

3.     Upon discovery of the fraud, Montefiore submitted an insurance claim for the Fraudulent Invoices. Pursuant to the terms and conditions of a commercial crime policy, National Union reimbursed Montefiore for its loss and obtained an assignment of Montefiore's claims against the Suppliers. National Union now pursues claims against the Suppliers as assignee and subrogee of Montefiore.

## THE PARTIES, JURISDICTION, AND VENUE

4.     National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") is a Pennsylvania company with its principal place of business in New York, New York.

5.     Surgalign is a Delaware corporation with its principal place of business in Illinois. This lawsuit arises out of Surgalign's conduct in this district and loss in this district.

6.     NuTech is an Alabama corporation with its principal place of business in Alabama. This lawsuit arises out of NuTech's conduct in this district and loss in this district.

7.     NuTech is owned by Organogenesis, Inc. ("Organogenesis").  Organogenesis is a Delaware corporation with its principal place of business in Massachusetts.

8.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are residents of different states and the amount in controversy exceeds $75,000.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district.

## MONTEFIORE'S NORMAL PURCHASE AND RECORD KEEPING PROCESS

10.     During the normal course of business, Montefiore uses implants during spinal surgeries. Due to the high cost of implants, manufacturer and/or distributors place these implants

in the operating room supply room on "consignment," to ensure that these implants are immediately available to the surgeon if he/she determines that the implant usage is appropriate for that particular patient.  Such implants are provided on a consignment basis, with the agreement that the supplier will bill Montefiore on a "pay-as-you-use" basis.

11.     During any patient's surgery, a surgeon may elect to utilize implants.  While a surgeon may expect that he/she will be required to utilize these implants, the determination to definitively utilize these implants cannot and is not usually made until after the surgical incision is made, based on individual patient needs.  Once the consigned implant is requested by the surgeon, it is retrieved from the operating room supply area by the operating room circulating nurse, who places the implant onto the sterile field for the surgeon's use. The operating room circulating nurse then documents the usage of the implant on the Perioperative Record.

12.     During the relevant period, Montefiore tracked the use of surgical implants through a triplicate Implant Tracking Log. The Implant Tracking Log had a white copy, a yellow copy and a pink copy.  During the legitimate surgery, Montefiore completed the Implant Tracking Log form and affixed a unique serialized sticker associated with each individual implant to each page of the log.  Thereafter, the yellow copy was scanned and sent to billing; the white copy was maintained with the patient's physical medical record; and the pink copy was maintained in a binder within the operating room.

13.     At the completion of the procedure, Montefiore created a purchase order for any implants used during the surgery.  The pink copy of the Implant Tracking Log was thereafter used to prepare a purchase order.  In order to create the purchase order, Montefiore accessed the pink copy of Implant Tracking Form to confirm what implants had been used during the surgery.   To the extent that the pink copy of Implant Tracking Form reflected that an implant had been used in

a surgery, Montefiore created a purchase order in favor of the supplier of that implant.  That purchase order was required prior to issuance of payments to any supplier.

14.     In a legitimate transaction, Montefiore's suppliers issued invoices to Montefiore. Upon receipt of an invoice, Montefiore would compare the invoice to the purchase order (created based upon and in reliance upon the pink copy of Implant Tracking Form) to confirm the use of the implant and then issue payment to its supplier.

### FRAUDULENTLY INDUCED PAYMENTS TO DEFENDANTS

15.     Defendants supplied Implants to Montefiore on a consignment basis.  Because the Implants were delivered to Montefiore on a consignment basis, the Suppliers agreed to bill Montefiore on a "pay-as-you-use" basis.  As a result, Defendants should not have issued invoices to Montefiore for any implant unless and until that implant was used in a surgery.

16.     Mastandrea, as the sales representative for the Suppliers, was responsible for tracking and storing Suppliers' Implants, and for moving the products into Montefiore's operating rooms for use during surgery. Mastandrea was also responsible for invoicing Montefiore for the Suppliers' Implants if used in surgeries. At all relevant times, the Suppliers represented to Montefiore that Mastandrea was their agent with respect to their Implants.

17.     Mastandrea fraudulently induced Montefiore into issuing payments for Implants that were not used during any legitimate surgery by creating fraudulent entries in the Implant Tracking Log.  Following otherwise legitimate surgeries, Mastandrea created fraudulent entries in the Implant Tracking Log representing therein that Suppliers' Implants had been used during the otherwise legitimate surgery.  In fact, Suppliers' Implants were not used in those surgeries. Nonetheless, Mastandrea created fraudulent records and represented that Suppliers' Implants had been used - even though the Suppliers' Implants had not been used in any surgery and thus, Suppliers were not entitled to any payment from Montefiore.

18.     Mastandrea conducted her fraud by creating fraudulent entries in the Implant Tracking Log and applying unique serialized stickers associated with the Suppliers' Implants on the log – including the pink copy of the Implant Tracking Log.  Mastandrea placed or caused to be placed Suppliers' unique serialized sticker on the pink copy of the Implant Tracking Log knowing that Montefiore relied upon the pink copy of the Implant Tracking Log to issue purchase orders, verify use of an implant, and issue payment.

19.     Mastandrea conspired with Dellosa, a nurse manager for Perioperative Services, to create fraudulent Implant Tracking forms. In particular, Mastandrea and Dellosa caused serialized stickers and/or other proof of use to be attached to the surgical implant forms even though the associated product was not actually used in surgeries ("Fraudulent Transactions"). Mastandrea paid Dellosa kickbacks for her assistance in the fraud.

20.     Because Mastandrea and Dellosa created fraudulent entries in the Implant Tracking Log, Montefiore was misled into believing that Suppliers' Implants had been used in a surgery (even though they had not been used in a surgery).  The fraudulent entries in the Implant Tracking Log fraudulently induced the issuance of a purchase order in favor of Suppliers ("Fraudulently Induced Purchase Orders"). These Fraudulently Induced Purchase Orders were part and parcel of the fraud in that they induced payments to Suppliers even though Montefiore did not owe any money to Suppliers.

21.     Thereafter, Mastandrea submitted invoices to Montefiore ("Fraudulent Invoices") requesting payment for amounts allegedly due to Suppliers).  Montefiore compared the fraudulent invoices submitted by Montefiore to the Fraudulently Induced Purchase Orders.  Because Fraudulently Induced Purchase Orders wrongly indicated that Suppliers' Implants had been used and Montefiore owed Suppliers for those Implants, Montefiore issued payment of the Fraudulent

Invoices.

22.     At all relevant times, Mastandrea acted within the scope of her duties as an agent of Suppliers and within the apparent authority granted by Suppliers.  Mastandrea's conduct occurred within the course and scope of her employment with the Suppliers and was motivated by a desire to increase the Suppliers' sales and thereby her own sales commission. As a result of the fraud, the Suppliers received substantial unearned profit for unused products and Mastandrea received a substantial sales commission.

23.     The Suppliers benefitted from Mastandrea's conduct in that Montefiore did not use their products during the Fraudulent Transactions and the Suppliers were not entitled to any payment from Montefiore.  However, as a result of Mastandrea's conduct, Montefiore was misled into believing that the Suppliers' products had been used in the Fraudulent Transactions and paid the Suppliers for products that were not used.

<strong>INSURANCE CLAIM AND PAYMENT</strong>

24.     Montefiore concluded that Dellosa and Mastandrea had colluded to fraudulently bill Montefiore for the Suppliers' products. Montefiore confirmed the fraud by comparing surgical records maintained during the surgeries to the Fraudulent Invoices.  The surgical records confirmed that Suppliers' Implants had not in fact been used in surgeries and that Montefiore had been induced to issue payments to Suppliers based upon misrepresentations in the Implant Tracking Log, the Fraudulently Induced Purchase Orders and Fraudulent Invoices.  Montefiore paid to Suppliers more than $3 million for Implants that had not been used and thus, suffered a loss of $3 million.

25.     National Union issued a commercial crime insurance policy under which Montefiore was an insured (Policy No. 01-593-48-07, the "Policy"). Montefiore submitted a claim under the Policy for its fraudulent payments to the Suppliers (the "Claim"). National Union

evaluated the Claim and determined that the Claim was covered under the terms and conditions of the Policy. After application of Montefiore's deductible, National Union submitted payment to Montefiore in the amount of $3,627,986. In exchange for this payment, Montefiore assigned to National Union its claims to the extent of National Union's payment. Pursuant to this assignment and National Union's payment under the Policy, National Union is subrogee and assignee of Montefiore against the Suppliers and any other responsible party.

### COUNT I: FRAUD VS. SURGALIGN

26.     National Union incorporates the allegations in paragraphs 1 through 25 as though fully set forth herein.

27.     Surgalign, through its agent (Mastandrea), represented to Montefiore that its products had been used in the Fraudulent Transactions by affixing or fraudulently inducing others to affix a unique serialized sticker to the pink copy of the Implant Tracking Log.

28.     By affixing or inducing others to affix a unique serialized sticker to the pink copy of the Implant Tracking Log, Surgalign, through its agent (Mastandrea), falsely represented to Montefiore that its products had been used in a surgery.

29.     Surgalign issued the Fraudulent Invoices to Montefiore, thereby falsely representing that its products had been used during a surgery and that Montefiore owed Surgalign for an Implant.

30.     Surgalign, through its agent (Mastandrea), knew that the Fraudulent Invoices contained a material misrepresentation in that they falsely represented that the products identified therein had been used during a surgery (when the products had not in fact been used in a surgery).

31.     Surgalign intended Montefiore to reasonably rely upon the Fraudulent Invoices and the unique serialized sticker to the pink copy of the Implant Tracking Log.

32.     Montefiore reasonably relied upon the false representations in the Fraudulent

Invoices and the fraudulently altered Implant Tracking Log associated with the Fraudulent Transactions when issuing payment to Surgalign.

33.     Montefiore paid the Fraudulent Invoices in reliance upon Surgalign's misrepresentations.

34.     Surgalign's fraudulent and intentional misrepresentations proximately caused Montefiore to suffer damages.

35.     National Union reimbursed Montefiore for its loss and is an assignee and subrogee of Montefiore's rights against Surgalign.

WHEREFORE, National Union Fire Insurance Company of Pittsburgh, Pa. respectfully requests entry of a judgment in its favor and against Surgalign in an amount to be computed at trial, plus pre-judgment interest, attorney's fees and all other relief allowed by law.

## COUNT II: UNJUST ENRICHMENT VS. SURGALIGN

36.     National Union incorporates the allegations in paragraphs 1 through 25 as though fully set forth herein.

37.     Surgalign, through its agent (Mastandrea), represented to Montefiore that its products had been used in the Fraudulent Transactions by affixing or fraudulently inducing others to affix a unique serialized sticker to the pink copy of the Implant Tracking Log.

38.     By affixing or inducing others to affix a unique serialized sticker to the pink copy of the Implant Tracking Log, Surgalign, through its agent (Mastandrea), falsely represented to Montefiore that its products had been used in a surgery.

39.     Surgalign issued the Fraudulent Invoices to Montefiore, thereby falsely representing that its products had been used during a surgery and that Montefiore owed Surgalign for an Implant.

40.     Surgalign, through its agent (Mastandrea), knew that the Fraudulent Invoices

contained a material misrepresentation in that they falsely represented that the products identified therein had been used during a surgery (when the products had not in fact been used in a surgery).

41.     Surgalign intended Montefiore to reasonably rely upon the Fraudulent Invoices and the unique serialized sticker to the pink copy of the Implant Tracking Log.

42.     Montefiore reasonably relied upon the false representations in the Fraudulent Invoices and the fraudulently altered Implant Tracking Log associated with the Fraudulent Transactions when issuing payment to Surgalign.

43.     As a result of the fraud, Surgalign received substantial unearned profit for unused products and Mastandrea received a substantial sales commission for the Fraudulent Invoices.

44.     National Union reimbursed Montefiore for its loss and is an assignee and subrogee of Montefiore's rights against Surgalign.

WHEREFORE, National Union Fire Insurance Company of Pittsburgh, Pa. respectfully requests entry of a judgment in its favor and against Surgalign in an amount to be computed at trial, plus pre-judgment interest, attorney's fees and all other relief allowed by law.

## COUNT III: AIDING AND ABETTING IN BREACH OF FIDUCIARY DUTY VS. SURGALIGN

45.     National Union incorporates the allegations in paragraphs 1 through 25 as though fully set forth herein.

46.     Dellosa, as an employee of Montefiore, owed a fiduciary duty to Montefiore.

47.     Surgalign (through its agent, Mastandrea) colluded with Dellosa to breach her fiduciary duty to Montefiore by falsely representing to Montefiore that Surgalign's products had been used in surgeries (even though they had not been used in surgeries).

48.     Surgalign (through its agent, Mastandrea) knew that Dellosa was an employee of Montefiore and that she owed a fiduciary duty to Montefiore.

49.      Surgalign (through its agent, Mastandrea) assisted Dellosa in the breach of her fiduciary duty by aiding her in affixing a unique serialized sticker to the pink copy of the Implant Tracking Log in connection with the Fraudulent Transactions.

50.      Surgalign (through its agent, Mastandrea) induced Dellosa to breach her fiduciary duty by paying Dellosa bribes.

51.      Montefiore paid the Fraudulent Invoices in reliance upon Surgalign's misrepresentations.

52.      Surgalign's conduct proximately caused Montefiore to suffer damages.

53.      As a result of the fraud, Surgalign received substantial unearned profit for unused products and Mastandrea received a substantial sales commission for the Fraudulent Invoices.

54.      National Union reimbursed Montefiore for its loss and is an assignee and subrogee of Montefiore's rights against Surgalign.

WHEREFORE, National Union Fire Insurance Company of Pittsburgh, Pa. respectfully requests entry of a judgment in its favor and against Surgalign in an amount to be computed at trial, plus pre-judgment interest, attorney's fees and all other relief allowed by law.

## COUNT IV: NEGLIGENT SUPERVISION VS. SURGALIGN

55.      National Union incorporates the allegations in paragraphs 1 through 25 as though fully set forth herein.

56.      Mastandrea was an agent of Surgalign.

57.      Surgalign, as principal of Mastandrea, owed a duty to exercise reasonable care and supervise its agent, Mastandrea.

58.      Surgalign breached its respective duty to supervise Mastandrea by failing to ensure that she, in connection with the Fraudulent Transactions, correctly affixed a unique serialized sticker to the pink copy of the Implant Tracking Log after completion of the surgery and use of

Suppliers' products.

59.     Surgalign breached its duty to supervise Mastandrea by failing to ensure that she, in connection with the Fraudulent Transactions, issued invoices for implants actually used during a surgery to Montefiore.

60.     Surgalign's failure to supervise Mastandrea and breach of its common law duties proximately caused Montefiore to suffer damages.

61.     National Union reimbursed Montefiore for its loss and is an assignee and subrogee of Montefiore's rights against Surgalign.

WHEREFORE, National Union Fire Insurance Company of Pittsburgh, Pa. respectfully requests entry of a judgment in its favor and against Surgalign in an amount to be computed at trial, plus pre-judgment interest, attorney's fees and all other relief allowed by law.

## COUNT V: FRAUD VS. NUTECH

62.     National Union incorporates the allegations in paragraphs 1 through 25 as though fully set forth herein.

63.     NuTech, through its agent (Mastandrea), represented to Montefiore that its products had been used in the Fraudulent Transactions by affixing or fraudulently inducing others to affix a unique serialized sticker to the pink copy of the Implant Tracking Log.

64.     By affixing or inducing others to affix a unique serialized sticker to the pink copy of the Implant Tracking Log, NuTech, through its agent (Mastandrea), falsely represented to Montefiore that its products had been used in a surgery.

65.     NuTech issued the Fraudulent Invoices to Montefiore, thereby falsely representing that its products had been used during a surgery and that Montefiore owed NuTech for an Implant.

66.     NuTech, through its agent (Mastandrea), knew that the Fraudulent Invoices contained a material misrepresentation in that they falsely represented that the products identified

therein had been used during a surgery (when the products had not in fact been used in a surgery).

67.     NuTech intended Montefiore to reasonably rely upon the Fraudulent Invoices and the unique serialized sticker to the pink copy of the Implant Tracking Log.

68.     Montefiore reasonably relied upon the false representations in the Fraudulent Invoices and the fraudulently altered Implant Tracking Log associated with the Fraudulent Transactions when issuing payment to NuTech.

69.     Montefiore paid the Fraudulent Invoices in reliance upon NuTech's misrepresentations.

70.     NuTech's fraudulent and intentional misrepresentations proximately caused Montefiore to suffer damages.

71.     National Union reimbursed Montefiore for its loss and is an assignee and subrogee of Montefiore's rights against NuTech.

WHEREFORE, National Union Fire Insurance Company of Pittsburgh, Pa. respectfully requests entry of a judgment in its favor and against NuTech in an amount to be computed at trial, plus pre-judgment interest, attorney's fees and all other relief allowed by law.

## COUNT VI: UNJUST ENRICHMENT VS. NUTECH

72.     National Union incorporates the allegations in paragraphs 1 through 25 as though fully set forth herein.

73.     NuTech, through its agent (Mastandrea), represented to Montefiore that its products had been used in the Fraudulent Transactions by affixing or fraudulently inducing others to affix a unique serialized sticker to the pink copy of the Implant Tracking Log.

74.     By affixing or inducing others to affix a unique serialized sticker to the pink copy of the Implant Tracking Log, NuTech, through its agent (Mastandrea), falsely represented to Montefiore that its products had been used in a surgery.

12

75.     NuTech issued the Fraudulent Invoices to Montefiore, thereby falsely representing that its products had been used during a surgery and that Montefiore owed NuTech for an Implant.

76.     NuTech, through its agent (Mastandrea), knew that the Fraudulent Invoices contained a material misrepresentation in that they falsely represented that the products identified therein had been used during a surgery (when the products had not in fact been used in a surgery).

77.     NuTech intended Montefiore to reasonably rely upon the Fraudulent Invoices and the unique serialized sticker to the pink copy of the Implant Tracking Log.

78.     Montefiore reasonably relied upon the false representations in the Fraudulent Invoices and the fraudulently altered Implant Tracking Log associated with the Fraudulent Transactions when issuing payment to NuTech.

79.     As a result of the fraud, NuTech received substantial unearned profit for unused products and Mastandrea received a substantial sales commission for the Fraudulent Invoices.

80.     National Union reimbursed Montefiore for its loss and is an assignee and subrogee of Montefiore's rights against NuTech.

WHEREFORE, National Union Fire Insurance Company of Pittsburgh, Pa. respectfully requests entry of a judgment in its favor and against NuTech in an amount to be computed at trial, plus pre-judgment interest, attorney's fees and all other relief allowed by law.

### COUNT VII: AIDING AND ABETTING IN BREACH OF FIDUCIARY DUTY VS. NUTECH

81.     National Union incorporates the allegations in paragraphs 1 through 25 as though fully set forth herein.

82.     Dellosa, as an employee of Montefiore, owed a fiduciary duty to Montefiore.

83.     NuTech (through its agent, Mastandrea) colluded with Dellosa to breach her fiduciary duty to Montefiore by falsely representing to Montefiore that NuTech's products had

been used in surgeries (even though they had not been used in surgeries).

84.    NuTech (through its agent, Mastandrea) knew that Dellosa was an employee of Montefiore and that she owed a fiduciary duty to Montefiore.

85.    NuTech (through its agent, Mastandrea) assisted Dellosa in the breach of her fiduciary duty by aiding her in affixing a unique serialized sticker to the pink copy of the Implant Tracking Log in connection with the Fraudulent Transactions.

86.    NuTech (through its agent, Mastandrea) induced Dellosa to breach her fiduciary duty by paying Dellosa bribes.

87.    Montefiore paid the Fraudulent Invoices in reliance upon NuTech's misrepresentations.

88.    NuTech's conduct proximately caused Montefiore to suffer damages.

89.    As a result of the fraud, NuTech received substantial unearned profit for unused products and Mastandrea received a substantial sales commission for the Fraudulent Invoices.

90.    National Union reimbursed Montefiore for its loss and is an assignee and subrogee of Montefiore's rights against NuTech.

WHEREFORE, National Union Fire Insurance Company of Pittsburgh, Pa. respectfully requests entry of a judgment in its favor and against NuTech in an amount to be computed at trial, plus pre-judgment interest, attorney's fees and all other relief allowed by law.

## COUNT VIII: NEGLIGENT SUPERVISION VS. NUTECH

91.    National Union incorporates the allegations in paragraphs 1 through 25 as though fully set forth herein.

92.    Mastandrea was an agent of NuTech.

93.    NuTech, as principal of Mastandrea, owed a duty to exercise reasonable care and supervise its agent, Mastandrea.

14

94.    NuTech breached its respective duty to supervise Mastandrea by failing to ensure that she, in connection with the Fraudulent Transactions, correctly affixed a unique serialized sticker to the pink copy of the Implant Tracking Log after completion of the surgery and use of Suppliers' products.

95.    NuTech breached its duty to supervise Mastandrea by failing to ensure that she, in connection with the Fraudulent Transactions, issued invoices for implants actually used during a surgery to Montefiore.

96.    NuTech's failure to supervise Mastandrea and breach of its common law duties proximately caused Montefiore to suffer damages.

97.    National Union reimbursed Montefiore for its loss and is an assignee and subrogee of Montefiore's rights against NuTech.

WHEREFORE, National Union Fire Insurance Company of Pittsburgh, Pa. respectfully requests entry of a judgment in its favor and against NuTech in an amount to be computed at trial, plus pre-judgment interest, attorney's fees and all other relief allowed by law.

Dated: New York, New York
          November 18, 2022

                                                    Respectfully submitted,

                                                    GORDON & REES, LLP

                                    By:     s/ *Brian Middlebrook*
                                                    Brian Middlebrook
                                                    Attorneys for Plaintiff
                                                    1 Battery Plaza, 28th Floor
                                                    New York, New York 10004
                                                    (212) 269-5500
                                                    bmiddlebrook@grsm.com