UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA., as
subrogee and assignee of Montefiore Medical
Center,

                              Plaintiff,

                 -against-

SURGALIGN SPINE TECHNOLOGIES,
INC. and ORGANOGENESIS, INC.,

                              Defendants.

Case No. 22-cv-09870 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union" or

"Plaintiff") brings this subrogation action against Surgalign Spine Technologies, Inc.

("Surgalign") and Organogenesis, Inc. ("Organogenesis" and, together, "Defendants"), alleging

fraud and other related violations of New York law. *See generally* ECF No. 13 (the "Amended

Complaint" or "Am. Compl."). Organogenesis moves to dismiss the claims brought against it in

the Amended Complaint.[1] *See* ECF No. 40 ("Br."). For the reasons stated below,

Organogenesis's motion to dismiss is GRANTED. National Union is granted leave to amend to

the extent that it can cure the pleading deficiencies discussed below.

---

[1] Surgalign also moved to dismiss the Amended Complaint. *See* ECF No. 38 ("Surgalign Br."). However, Surgalign filed for Chapter 11 bankruptcy on January 19, 2023, triggering an automatic stay of National Union's claims against it under this action. *See* ECF No. 51; *see also* 11 U.S.C. § 362(a)(1). Because Surgalign's bankruptcy proceedings remain pending, the stay as to Surgalign remains in effect and the Court holds Surgalign's motion to dismiss in abeyance.

# BACKGROUND

## I.   Factual Background

The following allegations, taken from the Amended Complaint, are presumed true for purposes of resolving Organogenesis's motion to dismiss, and the Court draws all reasonable inferences in favor of Plaintiff.  *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022).  Both Defendants marketed and sold products for use in spinal surgeries: Surgalign sold synthetic implants, and Organogenesis sold "tissue-based solutions."  Am. Compl. ¶ 1.  One of Defendants' customers was Montefiore Medical Center ("Montefiore"), which regularly uses implants during spinal surgeries.  *Id.* ¶¶ 2, 9.

Montefiore's typical process for using and purchasing surgical implants, including Defendants' products, operated in the following manner.  Suppliers sold their implants to Montefiore on consignment, placing them in Montefiore's operating-room supply area and billing the hospital on a "pay-as-you-use" basis.  *See id.* ¶¶ 9, 14.  When a surgeon opted to use an implant during a surgery, the operating room's circulating nurse retrieved it from the supply area, then documented its use on the patient's "Perioperative Record."  *Id.* ¶ 10.  During such a surgery, Montefiore recorded its use of surgical implants on an "Implant Tracking Log," completing that form in triplicate and affixing "a unique serialized sticker associated with each individual implant to each page of the log."  *Id.* ¶ 11.  After the surgery, one copy of the log was sent to Montefiore's billing department, another copy went in the patient's physical medical record, and a third copy went into a binder kept in the operating room.  *Id.*  Montefiore relied on this third copy to create a purchase order for any implants used during surgery.  *Id.* ¶ 12.  When Montefiore subsequently received an invoice from the supplier, it compared the invoice to its corresponding purchase order before issuing payment.  *Id.* ¶ 13.

"Between at least 2015 and 2020," Defendants retained Rosemarie Mastrandrea ("Mastrandrea") as a sales representative. *Id.* ¶ 2. Beyond marketing Defendants' products to Montefiore, Mastrandrea was responsible for tracking and storing the products, moving them into Montefiore's operating rooms, and invoicing Montefiore for their use. *Id.* ¶¶ 2, 15. Defendants represented to Montefiore that Mastrandrea was their agent with respect to their products. *Id.* ¶ 15. "At all relevant times, Mastrandrea acted within the scope of her duties as [Defendants'] agent . . . and within the apparent authority granted by" Defendants. *Id.* ¶ 21.

Hoping to increase Defendants' sales and – by extension – her own sales commissions, Mastrandrea induced Montefiore into paying for products that were never used. *Id.* ¶¶ 16, 21. The details of the scheme were as follows. Mastrandrea created fake entries in Montefiore's Implant Tracking Log, representing that Defendants' products had been used during various surgeries when, in fact, they were not used. *Id.* ¶ 16. To create these entries, Mastrandrea conspired with Rowena Dellosa ("Dellosa"), a nurse manager at Montefiore for Perioperative Services, to place Defendants' unique serialized sticker on the copy of the Implant Tracking Log kept in the operating room. *Id.* ¶¶ 2, 17-18. Mastrandrea paid Dellosa kickbacks for her assistance. *Id.* ¶ 18. These fraudulent entries in the Implant Tracking Log induced Montefiore to issue purchase orders for Defendants' products that, again, had not been used in any surgery. *Id.* ¶ 19. After Mastrandrea submitted invoices, Montefiore compared them to its corresponding purchase orders and subsequently issued payment to Defendants. *Id.* ¶ 20.

After learning of the scheme, Montefiore confirmed the fraud by comparing its surgical records to the invoices received from Defendants. *Id.* ¶ 23. Ultimately, Montefiore paid Defendants over $3 million for products that had not been used. *Id.* Montefiore submitted a claim for this loss under its commercial crime insurance policy with National Union. *Id.* ¶ 24.

National Union evaluated the claim, determined that it was covered under its policy, and

ultimately reimbursed Montefiore $3,627,986.  *Id.*  In exchange for this insurance payment,

Montefiore assigned to National Union its claims against Defendants.  *Id.*

## II.   Procedural History

As Montefiore's subrogee and assignee, National Union filed this action on November

18, 2022, against Surgalign and NuTech Spine, Inc. ("NuTech") asserting causes of action under

New York law against each defendant for common-law fraud, unjust enrichment, aiding and

abetting a breach of fiduciary duty, and negligent supervision.  *See* ECF No. 1 ("Compl.") ¶¶ 26-

97.  On January 27, 2023, National Union filed the operative Amended Complaint, which

changed the name of one co-defendant to reflect NuTech's merger into Organogenesis.  *See* Am.

Compl. ¶ 6.  Organogenesis moved to dismiss the Amended Complaint on March 10, 2023.  *See*

Br.  The motion is now fully briefed and presently before the Court.  *See* ECF Nos. 43 ("Opp."),

45 ("Reply").[2]

### LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6),

"a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  But a court need not "accept as true a legal

conclusion couched as a factual allegation."  *Id.* (quoting *Twombly*, 550 U.S. at 555).  A

complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and

more than "facts that are 'merely consistent with' a defendant's liability."  *Id.* (quoting *Twombly*,

550 U.S. at 557).  "Threadbare recitals of the elements of a cause of action, supported by mere

---

[2] Organogenesis adopts many of the arguments raised in Surgalign's brief.  *See* Br. at 1, 3, 6, 8-9.
Therefore, where relevant, the Court addresses Surgalign's arguments.  *See* Surgalign Br.

conclusory statements, do not suffice." *Id.* Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Rule 8 provides a general pleading standard that requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[c]laims sounding in fraud must satisfy the heightened pleading standards of [Rule] 9(b)." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022). Rule 9(b) states that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "One of the primary objectives of Rule 9(b)'s particularity requirement is to ensure that defendants receive 'fair notice of a plaintiff's claim, to enable preparation of a defense.'" *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 99 (2d Cir. 2023) (alterations adopted) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)). "Bare-bones allegations therefore do not suffice." *Id.* (quotation marks and citation omitted). To satisfy Rule 9(b)'s particularity requirement, a "complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); *see Chechele v. Laubies*, 527 F. Supp. 3d 526, 536 (S.D.N.Y. 2021) ("Rule 9(b) requires that claims sounding in fraud recite the who, what, when, where, and how." (quotation marks and citation omitted)).

DISCUSSION[3]

**I.    Fraud**

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015); *accord Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 106 N.E.3d 1176, 1182 (N.Y. 2018).  Organogenesis argues that the Amended Complaint (1) does not sufficiently plead the details of the alleged scheme to survive scrutiny under Rule 9(b); (2) engages in improper group pleading; and (3) does not plead sufficient facts to show that Organogenesis is liable for Mastrandrea's conduct.  Br. at 3-6; *see* Surgalign Br. at 5.  The Court will address each argument in turn.

**A.    Rule 9(b) Particularity**

The Court holds that National Union failed to allege with the required specificity the statements that it contends were fraudulent.  National Union refers generally to "Fraudulent Invoices," which "represent[ed] that [Organogenesis's] products had been used during a surgery and that Montefiore owed" Organogenesis for its use of those products.  Opp. at 8 (quoting Am. Compl. ¶ 64).  However, the Amended Complaint does not reference any specific examples of allegedly fraudulent invoices issued to Montefiore from Organogenesis.  While the Amended Complaint need not allege *every* fraudulent statement, it does not identify *any* statement in

---

[3] New York law applies to this diversity action because the alleged tortious acts occurred in New York, *see Velez v. Sebco Laundry Sys., Inc.*, 178 F. Supp. 2d 336, 339 (S.D.N.Y. 2001), and because the parties do not dispute its application, *see Allison v. Rite Aid Corp.*, 812 F. Supp. 2d 565, 568 (S.D.N.Y. 2011) ("Because the parties have relied on New York State law in presenting their arguments to this Court, we assume that New York law applies to this diversity action.").

6

particular.  *Cf. Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 516 (S.D.N.Y. 2016) ("The fact that Plaintiff has not attached every allegedly fraudulent invoice is not dispositive at this point in the litigation.").  Rather, National Union refers only to unspecified invoices for unspecified products that were submitted on unspecified dates between "at least 2015 and 2020," which induced Montefiore to issue payments for unspecified amounts.  Am. Compl. ¶ 2.  Without more, Organogenesis has no notice of which of its invoices were allegedly fraudulent or any information that it can cross-check against its own records.  *See Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 567-68 (S.D.N.Y. 2017) (finding that plaintiffs "alleged their purchases in sufficient detail to satisfy Rule 9(b)" where they "provide[d] [the defendant] with information that can be easily cross-checked against its internal catalog and sales reports"); *see also United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 86 (2d Cir. 2017) (holding in the context of the False Claims Act ("FCA") that "those who *can* identify examples of actual claims *must* do so at the pleading stage" under Rule 9(b)); *Wood ex rel. United States v. Applied Rsch. Assocs., Inc.*, 328 F. App'x 744, 750 (2d Cir. 2009) (summary order) (affirming dismissal of FCA claim on Rule 9(b) particularity grounds because "the Amended Complaint does not cite to a single identifiable record or billing submission they claim to be false, or give a single example of when a purportedly false claim was presented for payment by a particular defendant at a specific time" (brackets, quotation marks, and citation omitted)); *Lax v. Design Quest N.Y. Ltd.*, 955 N.Y.S.2d 34, 35 (1st Dep't 2012) (fraud claim did not meet New York's analogous particularity requirement because "plaintiffs fail[ed] to specify which invoices [we]re inflated" as part of a fraudulent billing scheme).

The cases on which National Union relies to argue that it sufficiently alleged specific fraudulent statements are unavailing.  *See* Opp. at 8-10 (citing *Sandoz Inc. v. Medwiz Sols., LLC*,

No. 20-cv-06943 (NSR), 2022 WL 118647 (S.D.N.Y. Jan. 12, 2022); *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212 (E.D.N.Y. 2009); and *One Step Up Ltd. v. Empire Apparel LLC*, No. 21-cv-05392 (PAC) (RWL), 2022 WL 1446553 (S.D.N.Y. Apr. 13, 2022), *report and recommendation adopted*, 2022 WL 4124943 (S.D.N.Y. Sept. 9, 2022)).  In all three cases, the plaintiff attached exhibits to their complaints describing at least some of the transactions at issue in the alleged fraud.  *See Sandoz Inc.*, 2022 WL 118647, at *5 (plaintiff identified specific statements as the alleged misrepresentations "and provided detailed explanations and accompanying exhibits as to why such representations were false"); *Grafman*, 655 F. Supp. 2d at 228 ("[P]laintiff provide[d], in multiple exhibits to its Amended Complaint, an extensive sampling of statements alleged to be fraudulent, including dates of mailing, corresponding claim numbers, entities which submitted many of the claims, the price allegedly paid by the submitting entity and the price charged to plaintiff."); *One Step Up*, 2022 WL 1446553, at *3-4 (the Amended Complaint "reference[d] purported examples" of fraudulent statements, attached as exhibits).  Rule 9(b) does not require National Union to list all the individual statements alleged to be fraudulent; it does require, however, enough factual details – either through specific examples or other identifying information – to give defendants "fair notice of . . . [P]laintiff's claim and adequate information to frame a response."  *Marino*, 264 F. Supp. 3d at 568 (citation omitted).  The Amended Complaint does not clear that bar.

The Court finds, however, that National Union has adequately alleged how and when the scheme at issue operated.  The Amended Complaint states that Mastrandrea submitted invoices for products that Montefiore did not actually use in any surgeries, and that Montefiore paid these after comparing them to corresponding purchase orders based on fake entries in the Implant Tracking Log.  Am. Compl. ¶¶ 16-20.  National Union's allegation that "Mastrandrea paid

Dellosa kickbacks for her assistance in the fraud," *id.* ¶ 18, is not – as Surgalign suggests – a conclusory statement, Surgalign Br. at 7, but a factual assertion that further details the workings of the alleged scheme.  National Union also sufficiently identifies "when" the scheme took place as the period "[b]etween at least 2015 and 2020."  Am. Compl. ¶ 2; *see Rana v. Islam*, 305 F.R.D. 53, 58 (S.D.N.Y. 2015) (explaining that "a complaint need only apprise a defendant of the general time period of any alleged misstatements to meet the requirements of Rule 9(b)" (quotation marks and citation omitted)); *One Step Up*, 2022 WL 1446553, at *4 (finding that a plaintiff had adequately alleged the timing of a fraudulent scheme as "a period of time starting in 2018").

### B.  Group Pleading

Organogenesis also argues that National Union engaged in improper group pleading.  Br. at 4-5.  On this point, the Court disagrees.  "It is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes."  *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 728 (S.D.N.Y. 2021) (quoting *Canon U.S.A., Inc. v. F & E Trading LLC*, No. 15-cv-06015 (DRH), 2017 WL 4357339, at *7 (E.D.N.Y. Sept. 29, 2017)).  "Plaintiffs must satisfy Rule 9(b) as to each defendant, and cannot do so by making vague allegations about the defendants as a unit."  *Id.* at 729 (alterations adopted) (quoting *S.E.C. v. U.S. Env't, Inc.*, 82 F. Supp. 2d 237, 241 (S.D.N.Y. 2000)).  "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."  *DiVittorio*, 822 F.2d at 1247.

As pleaded, the Amended Complaint gives Organogenesis fair notice of "the nature of [its] alleged participation in the fraud."  *Id.*  National Union alleges that Organogenesis retained Mastrandrea as a sales representative; Mastrandrea, in turn, altered Montefiore's Implant

Tracking Logs and submitted allegedly fraudulent invoices to induce Montefiore's payment for surgical implants, including Organogenesis's tissue-based solutions, that were never used. Am. Compl. ¶¶ 1-2, 19-20. These allegations provide Organogenesis with adequate notice of its alleged role in the overall scheme.

Organogenesis notes that the Amended Complaint refers to Organogenesis and Surgalign together as the "Suppliers," and to their different products jointly as "Implants." *See* Br. at 4-5. But "nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13-cv-07639 (LTS), 2015 WL 4040882, at *3 (S.D.N.Y. July 2, 2015) (alteration adopted and citation omitted). National Union's Amended Complaint not only alleges two sets of identical claims separately against each defendant, Am. Compl. ¶¶ 25-96; it also describes the alleged scheme so as to inform Surgalign and Organogenesis of their similar, but ultimately independent, roles, *id.* ¶¶ 1-2, 19-20. Organogenesis also points to ambiguity in Mastrandrea's employment relationship with Defendants as an example of improper group pleading. Reply at 5 (quoting Am. Compl. ¶ 21). While discovery will confirm whether Mastrandrea was "retained" by both defendants, the details of her employment as pleaded are not so unclear as to deprive Organogenesis of "fair notice of the claims against it." *Monterey Bay Mil. Hous.*, 531 F. Supp. 3d at 728 (citation omitted).

### C. Vicarious Liability

Finally, Organogenesis argues that the Amended Complaint fails to plead facts showing that Organogenesis is vicariously liable for Mastrandrea's alleged fraud under either an agency or *respondeat superior* theory of liability. Br. at 5-6; *see* Surgalign Br. at 10-12. The Court considers Organogenesis's potential liability under each theory.

10

1.  Agency Relationship

"Under New York law, 'an agent must have authority, whether apparent, actual[,] or implied, to bind his principal.'" *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 89 (S.D.N.Y. 2010) (quoting *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 122 (2d Cir. 1998)).  National Union's Amended Complaint does not argue that Mastrandrea acted with actual authority from Organogenesis.  *See generally* Am. Compl.  Nor does National Union argue the point in opposing Organogenesis's motion to dismiss.  *See* Opp.  Instead, National Union argues that Mastrandrea "acted within the apparent authority granted to her by Organogenesis."  *Id.* at 2; *see also* Am. Compl. ¶ 21 ("At all relevant times, Mastrandrea acted within the scope of her duties as an agent of Suppliers and within the apparent authority granted by Suppliers.").

"To adequately plead the existence of apparent authority, a plaintiff must allege words or conduct *of the principal*, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction on behalf of the principal." *Spagnola*, 264 F.R.D. at 90 (quotation marks and citation omitted); *accord Standard Funding Corp. v. Lewitt*, 678 N.E.2d 874, 877 (N.Y. 1997).  "[A]pparent authority is created only by the representations of the principal to the third party," and "the agent cannot confer authority upon himself or make himself an agent simply by saying that he is one."  *DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 286-87 (S.D.N.Y. 2014) (first quoting *Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989); then quoting *Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F. Supp. 2d 155, 161 (S.D.N.Y. 2007)); *accord Hallock v. State*, 474 N.E.2d 1178, 1181 (N.Y. 1984).

National Union has not plausibly alleged that Mastrandrea acted with apparent authority as Organogenesis's agent.  The only allegations supporting this claim are National Union's assertions that, "[a]t all relevant times, the Suppliers represented to Montefiore that Mastrandrea was their agent with respect to their Implants," Am. Compl. ¶ 15, and that "Mastrandrea

11

acted . . . within the apparent authority granted by Suppliers," *id.* ¶ 21.  But National Union does not further describe the "words or conduct" of Organogenesis "that give rise to the appearance and belief" that Mastrandrea had authority to sell Organogenesis's products on its behalf. *Spagnola*, 264 F.R.D. at 90 (citation omitted).  Without more context, the Court need not "accept as true" this "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see id.* at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) ("Allegations that are conclusory or unsupported by factual assertions are insufficient.").

National Union's cases on apparent authority do not upset the Court's conclusion.  *See Chubb & Son v. Consoli*, 726 N.Y.S.2d 398, 400 (1st Dep't 2001) (addressing on summary judgment whether "public adjusters should be exempt from general agency principles"); *Weinberger v. Mendelow*, 979 N.Y.S.2d 29, 31 (1st Dep't 2014) (finding sufficient pleading of agency where the company "held [the defendant] out as a 'principal,' which was akin to a partner" by listing him on its website as its only principal); *Hallock*, 474 N.E.2d at 1181-82 (finding that attorney had apparent authority to enter settlement on plaintiff's behalf where he "unquestionably had authority from plaintiffs to conduct settlement negotiations with defendants as he had done with plaintiffs' knowledge and assent during the weeks prior").  Therefore, the Court finds that National Union has not adequately pleaded an agency relationship between Organogenesis and Mastrandrea.

2. *Respondeat Superior*

The Court concludes, however, that National Union has plausibly alleged Organogenesis's liability for Mastrandrea's conduct under a *respondeat superior* theory.  Under this doctrine, "an employer may be vicariously liable for the tortious acts of its employees only if

those acts were committed in furtherance of the employer's business and within the scope of employment." *Browne v. Lyft, Inc.*, 194 N.Y.S.3d 85, 87 (2d Dep't 2023) (quoting *N.X. v. Cabrini Med. Ctr.*, 765 N.E.2d 844, 847 (N.Y. 2002)); *accord De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 416 (S.D.N.Y. 2015).  "The key element of respondeat superior is an employment relationship between the alleged tortfeasor and the party that the plaintiff is seeking to hold vicariously liable." *De Sole*, 137 F. Supp. 3d at 417 (alteration adopted) (quoting *Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 398 (S.D.N.Y. 2007)).  Here, National Union alleged that Organogenesis "retained" Mastrandrea "as a sales representative."  Am. Compl. ¶ 2.  In this capacity, "Mastrandrea marketed Suppliers' Implants to Montefiore."  *Id.* She was also "responsible for tracking and storing Suppliers' Implants," "for moving the products into Montefiore's operating rooms," and "for invoicing Montefiore for the Suppliers' Implants if used in surgeries."  *Id.* ¶ 15.  Mastrandrea received a commission for the sale of Organogenesis's products.  *See id.* ¶ 21.  These allegations, accepted as true, provide enough context at the pleading stage for the Court to find "an employment relationship" between Mastrandrea and Organogenesis.  *De Sole*, 137 F. Supp. 3d at 417 (citation omitted); *see id.* ("The determination of whether an employer-employee relationship exists turns on whether the alleged employer exercises control over the results produced, or the means used to achieve the results.  Control over the means is the more important consideration." (quoting *Chuchuca v. Chuchuca*, 890 N.Y.S.2d 573, 575 (2d Dep't 2009))).

Organogenesis emphasizes that the Amended Complaint does not refer to Mastrandrea as an "employee."  *See* Reply at 7.  The Court declines to insert the equivalent of a "magic words" pleading requirement into Rule 9(b).  *See, e.g.*, *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 110 (2d Cir. 2012) (finding in the securities-fraud context that a complaint need not use

"magic words," although "generalized and conclusory allegations" are not "well pleaded" (citation omitted)).  And to the extent that Organogenesis disavows liability for Mastrandrea's conduct because she was an independent contractor, *see* Surgalign Br. at 10-11, it raises an issue best addressed at the summary-judgment stage, *see Phillips v. Uber Techs., Inc.*, No. 16-cv-00295 (DAB), 2017 WL 2782036, at *4 (S.D.N.Y. June 14, 2017) ("[U]nder New York case law, the determination of whether an individual should be classified as an employee or independent contractor is fact intensive, and is premature at the Motion to Dismiss . . . stage."); *D. S. v. Positive Behav. Support Consulting & Psych. Res., P.C.*, 151 N.Y.S.3d 690, 693 (2d Dep't 2021) ("Whether an actor is an independent contractor or an employee is usually a factual issue for a jury." (citation omitted)).

## II.   Unjust Enrichment

National Union's unjust-enrichment claim is similarly subject to Rule 9(b)'s heightened pleading standard because it "sounds in fraud." *MacNaughton*, 67 F.4th at 99 (alteration adopted) (quoting *Olson*, 29 F.4th at 71); *see* Am. Compl. ¶ 19 ("Montefiore was misled into believing that Suppliers' Implants had been used in a surgery" because of "fraudulent entries in the Implant Tracking Log").  As to whether National Union has pleaded unjust enrichment with particularity, National Union and Organogenesis stand on the same particularity arguments already discussed with National Union's fraud claim.  *See* Br. at 6-7; Opp. at 17-19; Reply at 7. Therefore, the Court finds for the same reasons as discussed above that National Union has failed to plead unjust enrichment against Organogenesis with enough particularity under Rule 9(b).  *See DiMuro v. Clinique Lab'ys, LLC*, 572 F. App'x 27, 32 (2d Cir. 2014) (summary order) ("As we have already determined that Plaintiffs' consumer fraud claims were properly dismissed for failure to satisfy Rule 9(b), we also affirm the district court's dismissal of their unjust enrichment claim.").

### III.   Aiding and Abetting in Breach of Fiduciary Duty

National Union claims that Organogenesis, through Mastrandrea, assisted Nurse Dellosa in the breach of her fiduciary duty to Montefiore.  *See* Am. Compl. ¶¶ 80-89.  To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must show (1) "a breach by a fiduciary of obligations to another"; (2) "that the defendant knowingly induced or participated in the breach"; and (3) "that plaintiff suffered damage as a result of the breach." *In re Platinum-Beechwood Litig.*, 400 F. Supp. 3d 2, 5 (S.D.N.Y. 2019) (quoting *In re Sharp Int'l Corp.*, 403 F.3d 43, 49 (2d Cir. 2005)); *accord Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (1st Dep't 2003).

The Amended Complaint fails on the first element because it does not adequately allege that Dellosa owed a fiduciary duty to Montefiore.  "A fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Roni LLC v. Arfa*, 963 N.E.2d 123, 124 (N.Y. 2011) (quotation marks and citation omitted).  "Put differently, a fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other." *Id.* at 124-25 (quotation marks, brackets, and citation omitted).  However, "'employment relationships,' without more, 'do not create fiduciary relationships.'" *Pauwels v. Deloitte LLP*, 83 F.4th 171, 184 (2d Cir. 2023) (quoting *Rather v. CBS Corp.*, 886 N.Y.S.2d 121, 125 (1st Dep't 2009)).  "Special circumstances giving rise to a fiduciary duty may be present where the party that relied on the relationship 'reposed confidence in the other party and reasonably relied on the other's superior expertise or knowledge.'" *Id.* (alteration adopted) (quoting *Wiener v. Lazard Freres & Co.*, 672 N.Y.S.2d 8, 14 (1st Dep't 1998).  But the "mere communication of confidential information is not sufficient in and of itself to create a fiduciary relationship." *Id.* (alteration adopted) (quoting *Wiener*, 672 N.Y.S.2d at 14).

National Union describes Dellosa as a "nurse manager for Perioperative Services," Am. Compl. ¶ 2; *see also id.* ¶ 2, but otherwise provides no details about Dellosa's role and responsibilities as a Montefiore employee.  Even if accepted as true, these allegations merely state Dellosa's status as an employee of Montefiore; they do not permit the Court to conclude that Dellosa owed Montefiore any fiduciary duties.  *See Pauwels*, 83 F.4th at 184.  Nor does National Union allege any factual details to suggest that Montefiore "reposed confidence in [Dellosa] and reasonably relied on [her] superior expertise or knowledge." *Id.* (quoting *Wiener*, 672 N.Y.S.2d at 14).

Relying on *Louis Capital Markets, L.P. v. REFCO Group Ltd., LLC*, 801 N.Y.S.2d 490 (Sup. Ct. 2005), National Union argues that "[a]n employee owes a fiduciary duty to his employer as a matter of law," Opp. at 19 (quoting *Louis Cap. Mkts.*, 801 N.Y.S.2d at 495). However, subsequent New York courts have distinguished *Louis Capital* on the basis that it "was actually not a fiduciary duty case, but a breach of loyalty case."  *Sullivan & Cromwell LLP v. Charney*, 841 N.Y.S.2d 222, 2007 WL 1240437, at *6 (Sup. Ct. Apr. 30, 2007) (unpublished table decision).  New York law is otherwise clear that "employment relationships do not create fiduciary relationships." *Rather*, 886 N.Y.S.2d at 125 (collecting cases).  Beyond stating that Dellosa is a Montefiore employee, the Amended Complaint does not allege additional details suggesting that Dellosa owed fiduciary duties to Montefiore.  *See* Am. Compl. ¶¶ 2, 18. Therefore, the Court dismisses National Union's claim of aiding and abetting a breach of fiduciary duty.

IV.    **Negligent Supervision**[4]

Finally, National Union claims that Organogenesis breached its duty to supervise

Mastrandrea.  *See* Am. Compl. ¶¶ 90-96.  Under New York law, a plaintiff bringing a negligent-

supervision claim must allege, "in addition to the negligence elements of such a claim," that

(1) "the tort-feasor and the defendant were in an employee-employer relationship"; (2) "the

employer knew or should have known of the employee's propensity for the conduct which

caused the injury prior to the injury's occurrence"; and (3) "the tort was committed on the

employer's premises or with the employer's chattels."  *Rich v. Fox News Network, LLC*, 939

F.3d 112, 129 (2d Cir. 2019) (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir.

2004) (per curiam)); *accord Moore Charitable Found. v. PJT Partners, Inc.*, 217 N.E.3d 8, 14

(N.Y. 2023).  Organogenesis argues that National Union has failed to allege the first two

elements of its negligent-supervision claim.  *See* Br. at 8.

As discussed above, the Court has already found that National Union's Amended

Complaint adequately alleges that Mastrandrea is an employee of Organogenesis.  However, the

Court agrees that National Union has failed to plead any facts to support a finding that

Organogenesis knew or should have known of Mastrandrea's propensity for the conduct that

caused Montefiore's injuries prior to those injuries' occurrence.  Instead, National Union asserts

---

[4] Organogenesis argues that Rule 9(b) applies to National Union's claims for fraud, unjust
enrichment, and aiding and abetting in the breach of a fiduciary duty, but not its claim for
negligent supervision.  *See* Br. at 1, 6-9; *cf. Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d
245, 251 (S.D.N.Y. 2008) (Rule 9(b) applies to "any cause of action that bears a close legal
relationship to fraud" and "any non-fraud claim that the plaintiffs have made little, if any, effort
to differentiate from the fraud allegations upon which the action is predicated." (quotation marks
and citation omitted)).  Because Organogenesis "does not press its potential argument that Rule
9(b) applies to" National Union's negligent-supervision claim, the court applies Rule 8 to that
claim.  *Chiarelli v. Nissan N. Am., Inc.*, No. 14-cv-04327 (NGG), 2015 WL 5686507, at *10
(E.D.N.Y. Sept. 25, 2015) (applying Rule 8 to state consumer-protection claims where the
defendant did not ask the court to apply Rule 9(b)).

that Organogenesis "breached its duty to supervise Mastrandrea by failing to ensure that she, in connection with the Fraudulent Transactions, issued invoices for implants actually used during a surgery to Montefiore."  Am. Compl. ¶ 94.  This conclusory allegation is insufficient to state a claim.

National Union appears to concede that it has not alleged knowledge of Mastrandrea's propensity for fraudulent conduct but points to *Clark Street Wine & Spirits v. Emporos Systems Corp.*, 754 F. Supp. 2d 474, 482 (E.D.N.Y. 2010), which declined to dismiss a negligent-supervision claim for failing to allege this element, *see* Opp. at 23.  The Court cannot square this single decision with the conclusion of many others that the failure to allege an employer's knowledge warrants dismissal of the claim.  *See, e.g.*, *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 361-62 (S.D.N.Y. 2021) ("Under New York law, it is not sufficient for Plaintiff to allege generally that the Defendant failed to exercise care in the screening, hiring, or supervision of employees.  Plaintiff must also allege that, had the Defendant exercised the requisite care, it would have discovered the facts that made the employee at issue unsuitable to hire or retain."); *Doe v. Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014) (holding that the absence of factual allegations as to the employer's knowledge was fatal to the plaintiff's negligent-supervision claim); *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 330 (S.D.N.Y. 2011) (same); *Ogbolu v. Trs. of Columbia Univ. in City of N.Y.*, No. 21-cv-01697 (JPO), 2022 WL 280934, at *8 (S.D.N.Y. Jan. 31, 2022) (same), *aff'd*, No. 22-419, 2023 WL 2579044 (2d Cir. Mar. 21, 2023) (summary order); *Man Zhang v. City of New York*, No. 17-cv-05415 (JFK), 2019 WL 4513985, at *5 (S.D.N.Y. Sept. 19, 2019) (same).  Therefore, the Court dismisses National Union's negligent-supervision claim.

## V.   Amendment

Under Rule 15(a), a court "should freely give leave [to amend] when justice so requires."

Fed. R. Civ. P. 15(a)(2).   "Ordinarily, a plaintiff should be granted leave to amend at least once

after having the benefit of a court's reasoning in dismissing the complaint."  *United States ex rel.*

*Hart v. McKesson Corp.*, 602 F. Supp. 3d 575, 598 (S.D.N.Y. 2022) (citation omitted); *see*

*Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 833 (2d Cir. 2019) (noting

that the Second Circuit has been "particularly skeptical of denials of requests to amend when a

plaintiff did not previously have a district court's ruling on a relevant issue").   "This is especially

true on the Court's first ruling on a motion to dismiss."  *Hart*, 602 F. Supp. 3d at 599; *see*

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)

("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be

in a position to weigh the practicality and possible means of curing specific deficiencies.").

Because the Amended Complaint is not substantively different from the original

complaint, *see* Surgalign Br. at 4, the Court grants National Union leave to amend to the extent it

can cure the pleading deficiencies identified in the motion to dismiss and addressed in this

Opinion.   Any amendment should comply with the pertinent Local and Individual Rules,

including the Court's requirement that "[a]ny amended or corrected filing shall be filed with a

redline showing all differences between the original and revised filing."  Rochon Indiv. R. 1(I).

National Union is advised that, although its action against Surgalign is stayed, it would do well

to consider Surgalign's motion to dismiss in drafting its Second Amended Complaint because

opportunities to amend are not unlimited.

## CONCLUSION

For the reasons stated above, Organogenesis's motion is GRANTED and National

Union's Amended Complaint is DISMISSED with leave to amend.   Surgalign's motion to

dismiss (ECF No. 37) is HELD IN ABEYANCE pending the resolution of Surgalign's

bankruptcy proceeding.  Plaintiff shall file its Second Amended Complaint **within thirty days** of

this Opinion and Order.  National Union and Organogenesis are also hereby ordered to appear

for an Initial Pretrial Conference on **April 3, 2024, at 12:30 p.m.**, in Courtroom 20B at Daniel

Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007.  No

later than ten days prior to the conference, National Union and Organogenesis shall submit a

proposed Case Management Plan and Scheduling Order.

   The Clerk of Court is respectfully directed to terminate the motion at ECF No. 39.


Dated: February 7, 2024
      New York, New York

                                          SO ORDERED.


                                          _Jennifer Rochon_
                                          JENNIFER L. ROCHON
                                          United States District Judge